IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Nathaniel Jackson,<br><br>    Plaintiff,<br><br>v.<br><br>Admiral Michael Gilday; Vice Admiral Richard Cheeseman, Jr.; Executive Officer Johnny Mincey; Commander Ely Infante; Lieutenant Commander Luke Wilson; Unknown Officers 1–10,<br><br>    Defendants. | Case No. 0:24-cv-01155-SAL<br><br>**ORDER** |

Nathaniel Jackson ("Plaintiff") brings this action against the above-captioned defendants ("Defendants") alleging violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*. Defendants move to dismiss on several grounds. [ECF No. 48.] Plaintiff opposes their motion, ECF No. 53, and Defendants have replied, ECF No. 57.

This matter is before the court on the Report and Recommendation ("Report") issued by United States Magistrate Judge Paige J. Gossett, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending that Defendants' motion be granted. [ECF No. 67.] Plaintiff objects to portions of the Report and its ultimate recommendation. [ECF No. 68.] Defendants oppose his objections. [ECF No. 69.] For the reasons below, Plaintiff's objections are overruled, the court adopts the Report as modified, and Defendants' motion to dismiss is granted.

1

I.  **LEGAL STANDARDS**

    A.  **Review of a Magistrate Judge's Report**

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009).

**B.     Motion to Dismiss**

Under Fed. R. Civ. P. 12(b)(6),[1] a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). The court need not, however, accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." *Id.* at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss, a court can consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss, as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

---

[1] As noted in the Report, Defendants also raise arguments under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. But since Defendants are entitled to qualified immunity, Plaintiff's claims fail under Rule 12(b)(6), and the court need not reach the personal jurisdiction and venue issues raised in their motion to dismiss.

3

## II.  DISCUSSION

### A.  The Report

The magistrate judge recommends granting Defendants' motion to dismiss. [ECF No. 67.] The Report sets forth in detail the relevant facts and standards of law, and the court incorporates those facts and standards with only a brief synopsis of the same.

#### 1.  Factual Background

Plaintiff joined the United States Air Force in 2015. *Id.* at 1. On November 12, 2020, he pleaded guilty at a general court martial to violations of the Uniform Code of Military Justice. *Id.* As a result, he was dishonorably discharged and sentenced to thirty-six months of confinement. *Id.* While confined at the Naval Consolidated Brig at Joint Base Charleston (the "Brig"), Plaintiff converted to Islam. *Id.* Based on his sincere interpretation of Islamic tenets, Plaintiff wished to let his beard grow naturally. *Id.* at 1–2. He knew this would conflict with the Brig's policy requiring inmates to shave every morning, so he contacted the Brig's chaplain, Lieutenant Luke Wilson ("Lieutenant Wilson"), for advice.[2] *Id.* at 2.

Lieutenant Wilson told Plaintiff to apply for a religious exemption to the grooming policy. *Id.* Plaintiff claims he submitted his first exemption request in November 2021, which was denied in December 2021. *Id.* His request was allegedly denied because it was not submitted on the correct form. *Id.* So Plaintiff submitted a second request on January

---

[2] *See* U.S. Navy Uniform Regulations, NAVPERS 15665J, § 2201.2.a ("Brig prisoners . . . are not authorized to wear any facial hair except when medical waivers or religious accommodation have been granted.").

7, 2022, this time using a template provided by Lieutenant Wilson. *Id.* (citing ECF No. 48-3 at 1–2).

In April 2022, Lieutenant Wilson informed Plaintiff that his second exemption request was also improperly formatted. *Id.* Plaintiff updated and resubmitted his request once again. *Id.* In line with United States Navy procedures, Lieutenant Wilson then interviewed Plaintiff and submitted a recommendation to the Commanding Officer, Executive Officer Johnny Mincey ("Executive Officer Mincey"). *Id.* Lieutenant Wilson completed his report on April 15, 2022, finding Plaintiff's request to be sincere and consistent with his faith. *Id.* (citing ECF No. 48-4 at 1–2). His report also noted there is no consensus within the Muslim community about whether a beard is strictly required. *Id.* (citing ECF No. 48-4 at 1–2).

Executive Officer Mincey issued a report to the "Chief of Naval Operations" on May 3, 2022, recommending denial of Plaintiff's request. *Id.* (citing ECF No. 48-5 at 1–2). Vice Admiral Richard Cheeseman, Jr. ("Vice Admiral Cheeseman") took over as the Chief of Naval Operations on June 3, 2022, and granted Plaintiff's religious exemption request on November 10, 2022. *Id.* at 2–3 (citing ECF Nos. 48-1 at 6 & 48-7 at 1–2).

Between February and November 2022, while his exemption request was still pending, Plaintiff refused to shave and was disciplined as a result. *See id.* (citing ECF No. 48-8 at 1–28).[3] "[His] punishments included time in disciplinary segregation; a reduction

---

[3] The magistrate judge noted that, "[c]ontrary to [Plaintiff]'s assertion that he was continually held in disciplinary segregation while his exemption request was pending because he refused to compromise on his religious beliefs, [Plaintiff]'s disciplinary records

5

in custody classification; and loss of workdays, good conduct time, and the ability to earn abatement days." *Id.*

On March 6, 2024, Plaintiff filed this RFRA suit against the officials involved in evaluating his request and disciplining him during the interim. *See* ECF No. 1. Plaintiff seeks monetary damages against Defendants in their individual capacities. *See id.*

Defendants moved to dismiss, arguing *inter alia* that Plaintiff's claims are barred by the doctrine of qualified immunity. *See* ECF No. 48. The magistrate judge agreed and recommended Defendants' motion be granted on that basis. *See* ECF No. 67.

### 2. RFRA

RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). This is true unless the Government "demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

The magistrate judge observed that because Plaintiff's religious exemption request was granted, "his RFRA claim is necessarily limited." [ECF No. 67 at 5.] To the extent that a RFRA violation occurred, she reasoned that it must have occurred while his request was still pending, between February and November 2022. *Id.* Finally, since Plaintiff has now

---

show that 240 days of his time in disciplinary segregation resulted from violations totally unrelated to the shaving policy." *Id.* at 3 n.3 (citing ECF No. 48-9 at 1–10).

been granted a religious exemption, the magistrate judge concluded his request for injunctive relief is moot, leaving monetary damages as his sole potential remedy. *See id.*

### 3.     Qualified Immunity

"Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lebron v. Rumsfeld*, 670 F.3d 540, 560 (4th Cir. 2012) (applying qualified immunity to action brought under RFRA)). The analysis requires determining (1) whether the facts alleged show a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Courts must define the right "in light of the specific context of the case, not as a broad general proposition." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### 4.     Analysis and Recommendation

The magistrate judge concluded Defendants are entitled to qualified immunity. *See id.* at 10. Citing *Holt v. Hobbs*, she found there is "no question that a federal prisoner's right to seek religious exemption from an institutional grooming policy was clearly established at the time of [Plaintiff]'s detention and that denial of an exemption could violate RFRA." *Id.* at 6–7 (citing 574 U.S. 352 (2015)). Still, the magistrate judge explained that the clearly established right at issue is not the general right to seek a religious

exemption, but the right of a military prisoner to have an exemption adjudicated in fewer than eight months or to be exempt from policy compliance during the interim. *Id.* at 7.

Under the Navy's religious accommodation policy, BUPERS Instruction 1730.11A (the "Accommodation Policy"), a Navy military prisoner can seek a waiver of any Navy policy that conflicts with his religious beliefs. *See id.* at 9. The Accommodation Policy sets forth the process for requesting a waiver and reviewing the request, as well as the time it should take to approve the request. *Id.* Requests must be forwarded to the Deputy Chief of Naval Operations seven days after their submission. *Id.* (citing ECF No. 49 at 10). The Deputy Chief of Naval Operations is then tasked with "expeditiously adjudicat[ing]" the request. *Id.*

The magistrate judge acknowledged that Lieutenant Wilson and Executive Officer Mincey apparently failed to meet the seven-day deadline for forwarding Plaintiff's request to Vice Admiral Cheeseman. *Id.* at 10. She also found that Vice Admiral Cheeseman "arguably, was not 'expeditious' in his adjudication of the request." *Id.* "These errors, however, are not statutory or constitutional in nature; thus, the court cannot say that every reasonable official would have understood that a seven-month delay would violate [Plaintiff]'s constitutional or statutory rights." *Id.* Since Plaintiff failed to show Defendants should have been on notice that their actions violated his clearly established rights, the magistrate judge concluded they are entitled to qualified immunity. *Id.*

**B.     Plaintiff's Objections and Defendants' Responses**

Plaintiff's objections proceed in two parts. *See generally* ECF No. 68. First, he argues the magistrate judge's recommendation conflicts with the Supreme Court's decision

8

in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). *Id.* at 2–4. Second, he argues that her recommendation conflicts with *Holt v. Hobbs*, 574 U.S. 352 (2015). *Id.* at 4–6. Defendants challenge Plaintiff's objections on the grounds that (A) they lack specificity and (B) they raise new issues for the first time. ECF No. 69 at 1–4. Defendants also argue in support of the magistrate judge's conclusion that the right at issue was not clearly established. *Id.* at 5–7.

        1.    *Tanzin v. Tanvir*

Plaintiff devotes two pages to arguing that the Report conflicts with the Supreme Court's decision in *Tanvir*. *See* ECF No. 68 at 2–4. As he sees it, the Report "rests heavily on the Fourth Circuit's pre-*Tanvir* decision in *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012), and a judicial averseness to authorizing money damages against military officials in their personal capacities." *Id.* at 2 (citation modified). The *Lebron* court held that "whether RFRA even speaks to the military detention setting . . . [is] anything but clearly established." 670 F.3d at 560. Plaintiff argues *Tanvir* overruled *Lebron* on this point and RFRA's applicability to the military detention setting *is* now clearly established. *See* ECF No. 68 at 2. He also criticizes the Report for attempting to distinguish between prisoners in military versus civilian custody and for "seek[ing] to create a judicial exception that Congress did not." *Id.* at 2–3. According to Plaintiff, *Tanvir* expressly allows the type of monetary damages he seeks, and therefore the magistrate judge's reliance on *Lebron* is misplaced. *Id.* at 3–4.

The court disagrees with Plaintiff's contention that the Report "rests *heavily*" on *Lebron*. *See id.* at 2 (emphasis added). While the Report does address whether RFRA

9

applies to Plaintiff's claims and does cite *Lebron* in that context, the magistrate judge never definitively resolved the question of RFRA's applicability in military detention. *See* ECF No. 67 at 7–10. Instead, she concluded that Plaintiff's claims are barred by the doctrine of qualified immunity—"*even if* RFRA applies in the military detention setting and *even if* monetary damages are appropriate." *Id.* at 10 (emphasis added).

Accordingly, the court need not reach the merits of Plaintiff's *Tanvir*-based objections. Even assuming he is correct that RFRA authorizes suits for monetary damages in the military detention context, the true ground for the magistrate judge's recommendation stands: Plaintiff has failed to demonstrate that the right in question was "clearly established" and Defendants are therefore entitled to qualified immunity.

### 2. *Holt v. Hobbs*

Plaintiff's second objection is based on the Supreme Court's decision in *Holt*. There, Gregory Holt, a state prisoner and devout Muslim, challenged a state-prison grooming policy that prohibited inmates from growing beards unless they had a particular dermatological condition. *See* 574 U.S. at 352. The Court found the policy substantially burdened Holt's free exercise of religion under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") 42 U.S.C. §§ 2000cc, *et seq. Id.* at 352–53. It also emphasized that "RLUIPA [] allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'" *Id.* at 358 (quoting *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 436 (2006)). In sum, *Holt* affirmed the right of a prisoner to seek a religious exemption from an institutional grooming policy and that such exemptions may be denied only if doing so is the least

restrictive means of furthering a compelling governmental interest—such as preventing contraband or ensuring proper identification. *See* 574 U.S. at 356.

Plaintiff contends that *Holt* "made it 'sufficiently clear' to every reasonable official that prohibiting [him] from growing a beard, absent a compelling interest, was unlawful." [ECF No. 68 at 5.] He argues Defendants violated this clearly established right by the "the continuous, daily enforcement of a no-beard policy against [him]" and by "subjecting him to punishment for exercising his sincerely held religious beliefs." *Id.* at 4.

However, under the qualified immunity doctrine, the court's analysis "must be undertaken in light of the case's specific context, not as a broad general proposition." *Saucier*, 533 U.S. at 194. "[I]f it was not clear to a reasonable [official] that the conduct . . . was unlawful in the situation he confronted— then the law affords immunity from suit." *Parrish ex rel. Lee*, 372 F.3d at 301 (quotations omitted). The relevant question is whether, "at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011) (quotations omitted) (citation modified). In other words, the law must have provided Defendants with "fair warning" that their conduct was unlawful. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Plaintiff concedes that framing the right too broadly—such as a general "right to religious freedom"—would fail to provide meaningful notice to officials. [ECF No. 68 at 5.] But he argues the Report errs in the opposite direction by "defining the right with excessive specificity," noting that the Supreme Court and the Fourth Circuit have rejected

11

the notion that a right must have been recognized in a factually identical case to be "clearly established." *Id.* (citing *Hope*, 536 U.S. at 741; *Meyers v. Balt. Cnty.*, 713 F.3d 723, 734 (4th Cir. 2013) ("We repeatedly have held that it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity.")).

In the Report, the magistrate judge defined the right at issue as "the right of a military prisoner to have his exemption request adjudicated in less than eight months or to be free to violate the grooming policy while awaiting a decision on his exemption request." [ECF No. 67 at 7.] The court agrees this formulation may define the right with undue precision—particularly the phrase "in less than eight months," which likely exceeds the level of specificity needed. That said, the definition is otherwise sound, as is the magistrate judge's overall conclusion.

While Plaintiff insists he is merely asserting the right recognized in *Holt*, the facts here differ in significant ways. *Holt* confirmed a prisoner's right to seek a religious exemption from a grooming policy—something Plaintiff did. His request was ultimately granted. Thus, he is not asserting a right to a religious exemption per se, but rather the right to have that exemption granted promptly or the right to violate that policy while his request is pending.

Plaintiff contends his rights were violated "at the moment Defendants first denied him the accommodation he sought." [ECF No. 68 at 5.] Yet *Holt* does not suggest that religious exemptions must be granted immediately upon request, nor does it establish a right to disobey institutional policy while an exemption is under review. Plaintiff cites no

12

case or statute affirming such rights. Accordingly—even assuming they do exist—Plaintiff has failed to show that the state of the law from February to November 2022 was sufficiently clear to give Defendants "fair warning" that their conduct was unlawful. *Tolan*, 572 U.S. at 656.

"The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017) (quoting *Ashcroft*, 563 U.S. at 743). In the absence of clearly established authority recognizing the specific rights asserted by Plaintiff, Defendants are entitled to qualified immunity.

### III.    CONCLUSION

After reviewing the Report, the applicable law, and the record of this case in accordance with the above standard, the court adopts the Report as modified and **GRANTS** Defendants' motion to dismiss, ECF No. 48.

**IT IS SO ORDERED.**

July 11, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge